IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREA HAMILTON, individually and
on behalf of all others similarly situated,

                        Plaintiff,

    v.

3D IDAPRO SOLUTIONS, LLC,

                        Defendant.

OPINION and ORDER

18-cv-54-jdp

---

In this proposed class action, plaintiff Andrea Hamilton is suing defendant 3D Idapro Solutions, LLC for nuisance and negligence, alleging that foul-smelling odors are emanating from a food-dehydrating plant that 3D Idapro owns. The following motions are before the court: (1) Hamilton's motion for class certification, Dkt. 32; (2) 3D Idapro's motion to exclude the opinions of Hamilton's expert, Dkt. 48; (3) Hamilton's motion to exclude the opinions of 3D Idapro's expert, Dkt. 67; and (4) the parties' joint motion to stay a ruling on other pending motions during settlement negotiations, Dkt. 63.

The court will deny the parties' motion to stay as moot. The parties asked the court to stay a ruling for four weeks, but that was in April 2019, and the parties have not asked to renew the stay.

The court will deny Hamilton's motion for class certification and deny the motions to exclude the experts. Even if I credit Hamilton's expert, Hamilton has failed to meet the requirements in Federal Rule of Civil Procedure 23 that there are common questions of law or fact, and that the common questions predominate over any questions affecting individual class members. The court need not and has not considered the opinions of 3D Idapro's expert.

Because Hamilton may be able to cure these deficiencies, the court will deny the motion without prejudice and give Hamilton a short time to indicate whether she plans to renew her motion with additional information.

ANALYSIS

Hamilton seeks to certify a class of "[a]ll owner/occupants and renters of residential property residing within 1.5 miles of [3D Idapro's] facility's property boundary." Dkt. 25-1, ¶ 19. The facility is a food-processing plant in Wisconsin Rapids that dehydrates potatoes for use in dog food and other products. It has a history of emitting strong odors in the area, particularly in 2016 and 2017, when residents filed multiple complaints with the City of Wisconsin Rapids and the Wisconsin Department of Natural Resources about the odors. Dkt. 33-5.

There are three requirements for class certification under Rule 23: (1) the class must be "defined clearly" using "objective criteria," *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015); (2) the class must satisfy the threshold requirements of numerosity, commonality, adequacy, and typicality under Rule 23(a); and (3) the class must meet the requirements of at least one of the types of class actions listed in Rule 23(b). In this case, Hamilton seeks certification under Rule 23(b)(3), which applies when "the questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Hamilton satisfies the first requirement because she has clearly defined a class that can be identified using objective criteria—a class member is one who owns or rents residential

property within the class area. But Hamilton fails to satisfy the requirements of Rule 23(a) and (b) because she has not shown a connection between the proposed class area and the odors released from 3D Idapro's facility.

Under Rule 23(a)(2), a class action must involve "questions of law or fact common to the class." Closely related is Rule 23(b)'s requirement that common questions predominate over questions affecting individual class members. But it is not enough to simply raise a common question. An issue of fact or law is common only if it is capable of class-wide resolution. *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). In other words, class certification is appropriate only if the common questions have common answers, and if the plaintiff can demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (citation omitted).

Hamilton seeks to bring Wisconsin-law claims for negligence and private nuisance on behalf of the class. Her negligence claim has four elements: (1) a duty of care on the part of the defendant; (2) a breach of that duty; (3) a causal connection between the conduct and the injury; and (4) an actual loss or damage as a result of the injury. *Martindale v. Ripp*, 2001 WI 113, ¶ 33, 246 Wis. 2d 67, 89, 629 N.W.2d 698, 707. Hamilton's nuisance claim requires her to establish "a nontrespassory invasion of another's interest in the private use and enjoyment of land" that is either (1) intentional and unreasonable; or (2) unintentional and "otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities." *Bostco LLC v. Milwaukee Metro. Sewerage Dist.*, 2013 WI 78, ¶ 30–31, 350 Wis. 2d 554, 835 N.W.2d 160. (Hamilton does not specify which type of nuisance claim she is bringing, but her complaint alleges that 3D Idapro both

3

"intentionally and negligently caused an unreasonable invasion Plaintiffs' interest in the use and enjoyment of their property." Dkt. 29, ¶ 33.)

Some elements of these claims cannot be resolved on a class-wide basis. Even if all class members were exposed to 3D Idapro's odors, individual inquiries would be required to determine whether the odor was strong enough to interfere with the enjoyment of individual class members' property, or whether individual class members experienced an actual loss or damage. And Hamilton concedes that the extent of damages, such as any diminution in real estate value, will vary from person to person. But even when a claim as a whole cannot be resolved on a class-wide basis, Rule 23 allows an action to be "brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4); see also *Bell*, 800 F.3d at 379 ("The fact that the plaintiffs might require individualized relief or not share all questions in common does not preclude certification of a class."). Hamilton contends that whether 3D Idapro was negligent in its operation of the facility, and whether it released noxious odors into the class area, are issues that can be resolved on a class-wide basis.

Hamilton does not need to prove that she will prevail on the merits to establish that these issues are common to the class. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). But she must show that the requirements of Rule 23 are met, and the court must make whatever factual and legal inquiries are necessary to determine if the requirements of Rule 23 are met, even if those inquiries overlap with the merits. *Am. Honda Motor Co. v. Allen*, 600 F.3d 813, 815 (7th Cir. 2010). This requires the court to "walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377. The Seventh Circuit explained this

balance by comparing two ground-water pollution cases. *Id.* In *Mejdrech v. Met–Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003), the court certified a class of plaintiffs who alleged that a leaking container contaminated the class area's groundwater. They did not prove that the container had leaked or that the water was even contaminated, but they submitted evidence showing that any contamination in the class area's water could be traced to a single source. In contrast, in *Parko v. Shell Oil Co.*, 739 F.3d 1083, 1084 (7th Cir. 2014), the court reversed certification in part because plaintiffs had not shown that pollution in the groundwater could be traced to a single defendant or that residents in the class area relied on the groundwater as a source of water in their homes.

This case is more like *Parko* because Hamilton has not shown that odors suffered by the class area can be traced to a common defendant. She offers two main pieces of evidence in support of the commonality requirement: (1) the results of a survey of the of the proposed class area, and (2) the expert report of Dr. Mark Cal, an atmospheric-dispersion expert. Neither of them establishes that the residents of the proposed class area have suffered a common injury.

**A. Survey results**

The 1.5-mile radius of the class area is based on the results of a survey conducted by Hamilton's lawyers. (Both Hamilton and 3D Idapro refer to the survey results in their arguments, but neither side provided the full results to the court.) In the survey, Hamilton's counsel asked Wisconsin Rapids residents to indicate where they lived, how long they have lived there, and whether they had ever "noticed any offensive odors from the 3D Idapro Solutions facility." Dkt. 33-1. Respondents who noticed odors were asked to describe them. Hamilton says that residents of about 160 houses responded to the survey, and her liability

expert created a map that shows where the complaints fell within the proposed class area. Dkt. 60, at 5. The survey results roughly correlate with the proposed class area.

But it's not clear that every person who responded to the survey was complaining about the same smell. There are several other possible sources of noxious odors within or near the proposed class area including a landfill, a paper mill, and retaining ponds used by the paper mill to treat wastewater. 3D Idapro says (and Hamilton does not dispute) that survey recipients have described a variety of different smells, including "chemical" smells, "garbage" and "landfill" smells, and sulfur-based smells like "rotting eggs" or "cheese vomit." *See* Dkt. 46, at 8–9 (compiling a list of adjectives used by survey respondents). In contrast, when residents complained to the city in 2016 and 2017 about the smell coming from 3D Idapro's facility, they described the smell as "dog food." Dkt. 33-5, at 2–3.

Hamilton contends that 3D Idapro is the sole source of all these odors because multiple residents filed complaints with the City of Wisconsin Rapids and the Wisconsin Department of Natural Resources about 3D Idapro, Dkt. 33-5, and because the City of Wisconsin Rapids cited 3D Idapro several times for odor violations. *See* Dkts. 33-2, 33-3, 33-4. But this shows only that 3D Idapro's facility released odors, it does not provide any information about where those odors travelled or the proper scope of the class area. 3D Idapro was not the only business to receive complaints; residents also filed odor complaints about other businesses in the area, including several complaints about the paper mill located 1.5 miles east of 3D Idapro's plant. Dkt. 52 and Dkt. 62. And on at least one occasion, the city investigated a complaint against 3D Idapro and determined that the odor actually came from either the paper mill or a nearby landfill. Dkt. 52-5. The survey results do not differentiate between these sources.

B.  **AERMOD analysis**

Hamilton says that her expert, Mark Cal, will use AERMOD to determine, on a class-wide basis, whether 3D Idapro's odors reached class members' properties. AERMOD is an atmospheric dispersion modeling system used by the Environmental Protection Agency to chart the spread of particulate matter through the air.[1] Hamilton says that Cal can use AERMOD to identify the source of odors and rule out alternative sources. But Cal has not actually run any AERMOD simulations. His report says only that AERMOD would be capable of modeling odors within and around the class area. Dkt. 60. He makes no opinion about what those simulations will show or whether 3D Idapro's emissions will correlate, even roughly, with the proposed class area.

In this regard, Hamilton's motion for class certification presents issues that are nearly identical those in to *Brooks v. Darling Int'l, Inc.*, No. 114CV01128DADEPG, 2017 WL 1198542, at *14 (E.D. Cal. Mar. 31, 2017), an odor-nuisance class action that was brought by Hamilton's lawyers in California. In *Brooks*, the plaintiffs alleged that an animal rendering facility (a plant that breaks down animal waste into usable products) released noxious odors into their neighborhood. As in this case, plaintiffs sought to certify a class of all residents living within 1.5 miles of the facility and said that the class area reflected counsel's survey of residents in the area. *Id.* at *2. Also as in this case, they submitted a preliminary report from an expert who said that he could use AERMOD to model the spread of odors from the facility, but who had not actually run any simulations. The court denied certification, concluding that without

---

[1] *See Air Quality Dispersion Modeling - Preferred and Recommended Models*, United States Environmental Protection Agency, https://www.epa.gov/scram/air-quality-dispersion-modeling-preferred-and-recommended-models.

any actual modeling or testing of the odors, there was no evidence that residents within the proposed class area had suffered from a common injury. *Id.* at *8–9.

Hamilton makes no effort to differentiate *Brooks*. On the contrary, nearly all of Hamilton's briefs include misleading citations to *Brooks* to suggest that the *Brooks* court relied on the preliminary AERMOD report to certify the class. *See e.g.* Dkt. 33, at 11–12. But the *Brooks* court denied certification and told plaintiffs to renew their motion after they had conducted actual testing. The analysis of the *Brooks* court is persuasive. Given the similarity between the two cases, the court sees no reason why plaintiff's motion should come to a different result.

None of the other cases cited by Hamilton support certification. Most of them are orders approving settlement agreements, where class certification was not disputed. And in one of those cases, *Ng. v. International Disposal Corp. of California*, Case No. 112CV228591 (Santa Clara CA Superior Court Aug. 1, 2016) the court had previously denied certification even though the plaintiffs had conducted an AERMOD analysis and presented the results to the court. *Ng v. Republic Services Inc.*, Case No. 1-12-CV-228591 (Cal. Super. Santa Clara County, January 28, 2015). In almost every case in which a court granted a contested class certification motion, the plaintiffs' expert had used AERMOD or some other method to determine the class area before requesting certification.[2]

---

[2] *See Freeman v. Grain Processing Corp.*, 895 N.W.2d 105, 111 (Iowa 2017) (relying on AERMOD results to define class area); *Goreham v. Grain Processing Corporation*, No. LACV021232 (Muscatine Cty. Iowa District Ct., Oct. 28, 2015) (same); *Ponca Tribe of Indians of Oklahoma v. Cont'l Carbon Co.*, No. CIV-05-445-C, 2007 WL 28243, at *3 (W.D. Okla. Jan. 3, 2007) ("the geographic scope of the class was determined by their experts based on the degree of pollution deposited on the land.").

The one exception is *Stanley v. U.S. Steel Co.*, No. 04-74654, 2006 WL 724569 (E.D. Mich. Mar. 17, 2006). But *Stanley* was decided before the Supreme Court clarified the standard for commonality in *Dukes*. And although the *Stanley* court found that the source of pollution was a "common question," it did not consider whether that question had a common answer or could be resolved on a class-wide basis.

Hamilton argues that Cal does not need to conduct an AERMOD analysis until after certification because, at this point, it is premature to determine whether the class members actually experienced odors. Hamilton is correct that she need not prove success on the merits— a class may be certified even if it consists largely (or entirely) of members who will ultimately be shown to have suffered no harm. *Messner*, 669 F.3d at 824. But if "a class is defined so broadly as to include a great number of members who for some reason could not have been harmed by the defendant's allegedly unlawful conduct"—for example, because they lived too far outside the range of the facility's emissions—then the class is defined too broadly to permit certification. *Id.*

In general, when a class definition is overbroad, the court should attempt to narrow the class definition instead of flatly denying certification. *Id.* at 825. But in this case, Hamilton has not provided the information necessary to craft an appropriately narrow class definition. There is simply no evidence that the court could rely on to determine which areas have potentially been subjected to 3D Idapro's emissions and which areas have not.

## CONCLUSION

Because Hamilton has not established an issue of law or fact common to the proposed class members, much less one that predominates over questions affecting individual class

9

members, the court will deny her motion for class certification. But Hamilton could potentially cure this deficiency by submitting AERMOD simulations, or some other preliminary testing, and class area based on that information. *See Brooks*, 2017 WL 1198542, at *8. So the court will deny the motion without prejudice and give Hamilton has until August 8, 2019, to respond to this order and explain whether she plans to resubmit her motion for class certification with additional evidence. If Hamilton plans to use Cal's AERMOD simulation to define the class area, she should explain how long it will take Cal to obtain the necessary data and run the simulations.

ORDER

IT IS ORDERED that:

1. Plaintiff Andrea Hamilton's motion for class certification, Dkt. 32, is DENIED without prejudice.

2. Hamilton has until August 8, 2019, to respond to this order and indicate whether she plans to file a renewed motion for class certification with additional evidence supporting her class definition.

3. Defendant 3D Idapro Solutions, LLC's motion to exclude opinions of Dr. Mark Cal, Dkt. 48, and plaintiffs' motion to exclude opinions of Dr. John Kind, Dkt. 67, are DENIED.

4. The parties' joint motion for extension of time, Dkt. 63, is DENIED as moot.

Entered August 1, 2019.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge